UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| INSURANCE COMPANY OF THE WEST, | § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. C-10-390 |
| H&G CONTRACTORS, INC., *et al*, | § § | |
| Defendants. | § § | |

## **ORDER**

On this day came on to be considered Plaintiff Insurance Company of the West's Motion for Default Judgment as to Defendant Gary S. Garnett. (D.E. 20.) For the reasons stated herein Plaintiff's Motion for Default Judgment is GRANTED.

**I.     Jurisdiction**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy exceeds $75,000. (D.E. 1 at 1-2.)

**II.     Factual and Procedural Background**

This action was filed in this Court on December 3, 2010, and reinstated after dismissal on March 10, 2011. (D.E. 1; D.E. 9.) Plaintiff (the "Surety") alleges that it issued performance and payment bonds on behalf of H & G Contractors, Inc ("H &G") in connection with construction projects in and around Corpus Christi, Texas. (D.E. 1 at 2-3.) H & G was named as the principal on the bonds. (Id.)

On or about May 17, 2006, H & G and Gary S. Garnett (collectively the "Indemnitors") executed a General Indemnity Agreement (the "Indemnity Agreement") in favor of Plaintiff for any and all loss or expense Plaintiff incurred in connection with issuing the Bonds. (Id. at 3.)

The Indemnity Agreement included both indemnification and collateral clauses under which the Indemnitors agreed to indemnify the Surety against liability for losses and expenses. (Id. at 3-4.)

On or about August 12, 2010, H & G informed the Surety that it would no longer be able to perform its obligations under the bonded contracts and was in default. (Id. at 4.) H & G then abandoned its Laguna Shores project, resulting in a notice of suspension from the City of Corpus Christi on August 20, 2010. (Id.) In October 2010, H & G officially ceased operations and began to demobilize its projects. (Id.) Consequently, project owners began issuing notices of default and intent to terminate contracts with H & G. (Id.) At the filing of the Complaint, the Surety estimated losses under the bonds of over $3,000.000. (Id.) The Surety contends that as signatories to the Indemnity Agreement, the Indemnitors have an obligation to indemnify and exonerate the Surety from any loss. (Id.)

Plaintiff brings claims for breach of the Indemnity Agreement and common law indemnity. (Id. at 4-5.) Plaintiff seeks specific performance of the indemnity agreement, along with recovery of attorney's fees and expenses. (Id. at 6-7.) Plaintiff also seeks relief in the form of exoneration and quia timet. (Id. at 7.)[1]

On April 6, 2011, the Court held an initial pre-trial conference. At the hearing, counsel for H & G represented to the Court that H & G had filed Chapter 7 Bankruptcy. Counsel then made an oral motion to refer this action to the Bankruptcy Court. The Court granted the Motion on April 7, 2011, and retained the case against Defendant Garnett. (D.E. 17.)

---

[1] Exoneration is the equitable right of a surety to compel its principal to pay his or her debt and thereby discharge the surety's obligation under its bond. See Filner v. Shapiro, 633 F.2d 139, 142 (2d Cir.1980). Quia timet is the right of the surety to compel its principal to place the surety "in funds" sufficient to prevent anticipated future losses, where a surety has reasonable grounds to believe that its principal will not perform his obligations. In re Gas Reclamation, Inc. Securities Litigation, 741 F.Supp. 1094, 1105 (S.D.N.Y. 1990).

On April 1, 2011, the Surety filed proof of service with the Court showing that Defendant Garnett was served with a copy of the Surety's Original Complaint on March 25, 2011. (D.E. 12.) More than twenty-one days passed since the date of service of process and Garnett failed to answer. On April 19, 2011, the Surety requested an Entry of Default against Garnett. (D.E. 18.) On June 15, 2011, the Clerk entered a Clerk's Entry of Default against Garnett. (D.E. 19.)

On September 13, 2011, the Surety filed a Motion for Default Judgment against Defendant Garnett. (D.E. 20.) Per Defendant Garnett's breach of the Indemnity Agreement, the Surety seeks a default judgment of $1,388,400.14 plus court costs and post-judgment interest. (Id.) The response deadline was October 4, 2010 and Garnett failed to respond. (See Local Rules 7.3, 7.4.)

## III.   Discussion

### A.   Default Judgment

In the Fifth Circuit there are three steps to obtaining a default judgment: (1) default; (2) entry of default; and (3) default judgment. New York Life Ins. Co v. Brown, 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when "a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." Id. The clerk will enter an entry of default when default is established by affidavit or otherwise.[2] Id. After the clerk's entry of default, "a plaintiff may apply for a judgment based on such default. This is a **default judgment.**" Id. (emphasis in original) (citations and footnote removed).

---

[2] The plaintiff is responsible for properly serving all defendants with summons and a copy of the complaint. Fed. R. Civ. P. 4(c) (1). Once served, a defendant must file a reply to the complaint within 21 days of service. Fed. R. Civ. P. 12(a)(1)(A)(i). "Until the plaintiff serves the defendant, the defendant has no duty to answer the complaint and the plaintiff cannot obtain a default judgment." Rogers v. Hartford Life & Accident Ins. Co., 167 F.3d 933, 937 (5th Cir. 1999). Federal Rule of Civil Procedure 4 provides various methods of perfecting service upon different types of defendants such as delivering a copy of the summons and the complaint personally. Fed. R. Civ. P. 4(b)(2)(A). In this case, the return of service concerning Defendant Garnett shows that the summons and a copy of the complaint were personally delivered in compliance with Rule 4(e). (D.E. 12.)

After the entry of default by the clerk, a default judgment may be entered against parties that have appeared in the action "either personally or by a representative." Fed. R. Civ. P. 55(b)(2).[3] Rule 55(b)(2) also requires that written notice be given of an application to the court for entry of default judgment. Id. Rule 55(b)(2) does not however require the district court to hold an evidentiary hearing or oral argument before entering a default judgment. SUA Ins. Co. v. Buras, 421 Fed.App'x 384, 384 (5th Cir. 2011) (per curiam) (unpublished) (citing Sec. and Exch. Comm'n v. First Fin. Group of Texas, 659 F.2d 660, 669 (5th Cir. 1981)). See also Turner v. Salvatierra, 580 F.2d 199, 201 (5th Cir. 1978) (notice is required under Rule 55(b)(2) when the party against whom the claim is made has made an appearance, even when the claim is for a sum certain); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2688 at 57-58 (3d ed. 1998). Here, both Defendant and Defendant's counsel were served with notice of Plaintiff's Motion for a Default Judgment via certified mail on September 13, 2011. (D.E. 20 at 4.) As a result, the Court sees no procedural bar to the entry of default judgment.

The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. Rogers v. Hartford Life & Accident Ins. Co., 167 F.3d 933, 936 (5th Cir. 1999). See also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by the courts only in extreme situations."). This policy however, is "counterbalanced by considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." Rogers, 167 F.3d at 936 (quoting Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)). See

---

[3] In this case, Plaintiff served Defendant Garnett on March 26, 2011. (D.E. 12.) At the initial pretrial conference on April 6, 2011, John Cromwell represented to the Court that he was serving as counsel for H & G and Defendant Garnett. Thus, Garnett made an appearance" for purposes of Rule 55(b)(2). See 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2686 at 41 (3d ed. 1998) (noting that an appearance generally requires a presentation or submission to the court).

also Merrill Lynch Mortg. Corp. v. Narayan, 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

When making a determination as to whether to enter a default judgment district courts are to consider the following factors: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice (3) whether grounds for default are clearly established (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the Court would feel obligated to set aside default on defendant's motion.[4] Lindsey v. Prive Corp, 161 F.3d 886, 893 (5th Cir. 1998). Any doubt, however, as to whether to enter or set aside a default judgment must be resolved in favor of the defaulting party. See id.; Davis v. Parkhill–Goodloe Co., Inc., 302 F.2d 489, 495 (5th Cir. 1962).

Applying these factors to the present case the Court finds that the perquisites for default judgment satisfied. Defendant has not filed any responsive pleadings, and thus there are no material facts in dispute. Lindsey, 161 F.3d at 893; Nishimatsu Constr. Co. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Defendant's failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests. Lindsey, 161 F.3d at 893; see also Sun Bank, 874 F.2d at 276. Further, there is no evidence indicating that "a good faith mistake or excusable neglect" caused the default, and Defendant has had ample time to

---

[4] As to the sixth factor listed, entry of default can be set aside for "good cause." Fed. R. Civ. P. 55(c). Factors used by the Fifth Circuit to determine "good cause" include: (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is presented. CJC Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60, 64 (5th Cir. 1992). These factors appear to be subsumed by the default judgment factors listed in Lindsey, making the sixth factor in Lindsey a "catch-all," so that default judgment must be denied wherever "good cause" sufficient to set aside default exists.

answer, mitigating the harshness of a default judgment.  Lindsey, 161 F.3d at 893.  See e.g., Elite v. The KNR Group, 216 F.3d 1080 (Table), 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent a letter to the court apprising the court that his failure to appear was due to financial privation).  Moreover, Plaintiff only seeks the relief for which it is entitled to under the Indemnity Agreement.  See Helena Chemical Co. v. Goodman et al., No. 5:10-cv-121, 2011 WL 1532200, at *5 (S.D. Miss. Apr. 21, 2011).  Finally, based on the facts known to the Court at this time, there does not exist any "good cause" for which it would be obligated to set aside the default if challenged by Defendant.  See Lindsey, 161 F.3d at 893; CJC Holdings v. Wright & Lato, Inc., 979 F.2d 60, 64 (5th Cir. 1992).

"[A] defendant's default does not in itself warrant the court in entering default judgment.  There must be a sufficient basis in the pleadings for the judgment entered."  Lindsey, 161 F.3d at 893.  See also Jackson v. FIE Corp., 302 F.3d 515, 525 n.29 (5th Cir. 2002) (noting that after a default judgment, the factual allegations of the complaint are taken as true, except regarding damages); Nishimatsu Constr. Co., 515 F.2d at 1206.  In the event of default, the Court must accept pleaded facts as true, but retains the obligation to determine whether those facts state a claim upon which relief may be granted.  See Lewis v. Lynn, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) (holding district court's refusal to enter default judgment proper because plaintiff's factual allegations, even if found true, could not impose liability against defendants).

Plaintiff's complaint alleges a breach of an indemnity agreement.  (D.E. 1 at 4-5.)  To prevail on a breach of indemnity agreement claim under Texas law, a plaintiff must establish five elements: "(1) a contractual indemnity agreement existed between the [parties], (2) the agreement obligated the [Defendant] to indemnify [Plaintiff] in the event claims were made on the bonds issued . . . , (3) claims were made on the bonds issued . . . , (4) all conditions precedent

for recovery had occurred, been performed, waived, or excused, and (5) [Plaintiff] has been damaged." Transamerica Ins. Co. v. Avenell, 66 F.3d 715, 719 (5th Cir. 1995). More generally, the elements of breach of contract under Texas law are as follows: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." Crowder v. Scheirmann, 186 S.W.3d 116, 118-19 (Tex. App. – Houston [1st Dist.] 2005). The Texas Supreme Court requires that indemnity agreements be strictly construed to give effect to the parties; intent as expressed in the agreement. Ideal Lease Serv. v. Amoco Prod. Co., 662 S.W.2d 951, 953 (Tex. 1984). See also Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 284 (Tex. 1998) (indemnity agreements are construed under the normal rules of contract construction).

Here, Plaintiff alleges that it entered into an Indemnity Agreement with Defendant Garnett (as well as with H & G), whereby Defendant Garnett agreed to indemnify Plaintiff for any and all losses or expenses incurred by Plaintiff in connection with issuing the bonds. (D.E. 1 at 3; D.E. 20-2.) Plaintiff also claims that several claims were made on the bonds by owners of the construction projects. (D.E. 1 at 4.) Plaintiff alleges that it made a written demand on Defendant Garnett to fulfill his obligations and indemnify Plaintiff and Defendant Garnett failed to respond. (Id. at 4.) At the time Plaintiff filed its Complaint, Plaintiff estimated a loss in excess of $3 million. (Id.) Assuming these allegations to be true, Plaintiff has satisfied the elements to make out a valid claim for breach of an indemnity agreement.[5] See Washington

---

[5] Plaintiff also brought claims for common law indemnity, specific performance, exoneration, and quia timet, (D.E. 1 at 5-7.) Under Texas law however, "the availability of common law indemnity is extremely limited." Vecellio Ins. Agency, Inc. v. Vanguard Underwriters Ins. Co., 127 S.W.3d 134, 138 (Tex. App. – Houston [1st Dist.] 2003) (citing Cypress Creek Util. Serv. Co. v. Muller, 640 S.W.2d 860, 864 (Tex. 1982). In Texas, common law indemnity is only available in "products liability actions to protect an innocent retailer in the chain of distribution and in negligence actions to protect a defendant whose liability is purely vicarious in nature." Id.; B & B Auto Supply, Sand Pit & Trucking Co. v. Cent. Freight Lines, Inc., 603 S.W.2d 814, 816-17 (Tex. 1980). Thus, Plaintiff

Intern. Ins. Co. v. Consol. Metroplex Const. Services, L.L.C., No. 4:10-cv-573-A, 2011 WL 1676428 (N.D. Tex. May 3, 2011).

### B. Damages

A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages. Jackson, 302 F.3d at 521, 524-25; United States v. Shipco Gen. Inc., 814 F.2d 1011, 1014 (5th Cir. 1987). Ordinarily, damages will not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979). However, when the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents, and when a hearing would not be beneficial, a hearing is unnecessary. James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." Id. at 311 (citations omitted).

In support of its Motion for Default Judgment, the Surety filed an Affidavit of Susan Karlan, Vice President, Surety Department for Insurance Company of the West. (D.E. 20, Ex. B.) Karlan's affidavit lists the performance and payment bonds issued by the Surety at the request of the Indemnitors. (D.E. 20, Ex. B at 2.) Attached to the affidavit is an itemized statement of losses and expenses incurred by the Surety on each of those bonds. (D.E. 20, Ex. B at 13.) Thus, this is amount capable of mathematical calculation and a hearing is not necessary. See Leedo Cabinetry v. James Sales & Distribution, Inc., 157 F.3d 410, 414 (5th Cir. 1998)

---

cannot maintain a common law indemnity claim as this is not a products liability action nor is it a negligence action. Further, specific performance is not a cause of action but rather an equitable remedy that may be used as a substitute for monetary damages when such damages would not be adequate. Stafford v. Southern Vanity Magazine, Inc., 231 S.W.3d 530, 535 (Tex. App. – Dallas 2007) (citations omitted). Lastly, Plaintiff's Motion for Default Judgment does not request that the Court enforce its rights to exoneration and quia timet. As such, the Court will refrain from determining whether Plaintiff is entitled to such relief.

(evidentiary hearing on damages unnecessary where affidavit and supporting documents demonstrated amount owed to the plaintiff).

### III.     Conclusion

For the reasons set forth above, the Court GRANTS Plaintiff's Motion for Default Judgment as to Defendant Gary S. Garnett in the amount of $1,388,400.14 (plus court costs and post-judgment interest at .11% per annum.)

SIGNED and ORDERED this 5th day of October, 2011.

_____
Janis Graham Jack
Senior United States District Judge